## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SPECIALTYCARE, INC., a Delaware corporation, REMOTE NEUROMONITORING PHYSICIANS, PC, a Pennsylvania corporation and SENTIENT PHYSICIANS, PC, an Illinois corporation, | JURY TRIAL DEMANDED |
| | Case No. |
| Plaintiffs, | |
| v. | |
| UNITEDHEALTHCARE, INC., a Delaware corporation, | |
| Defendant. | |

## COMPLAINT

Plaintiffs, SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC (collectively, "**SpecialtyCare**"), bring this action against Defendant, UNITEDHEALTHCARE, INC. ("**UHC**"), and allege as follows:

## INTRODUCTION

1.     Defendant UHC is violating the Federal No Suprises Act ("NSA") and engaging in bad faith claims settlement practices. UHC has devised a scheme to turn the purpose of the NSA on its head. Rather than Independent Dispute Resolution ("IDR") proceedings being a quick, efficient way to resolve payment disputes between health plans and out-of-network ("OON") emergency health care services and non-emergency services furnished by OON providers at participating hospitals and facilities, UHC has used the

NSA to deny, delay, and underpay out-of-network providers. After providers receive low initial payments from UHC (or no payment at all), providers must navigate the NSA to receive a determination for fair compensation for their services. Once a provider receives an IDR award determination, UHC delays payment far beyond the statutorily mandated 30-day deadline.

2.     This scheme falls squarely within the type of unfair and deceptive trade practice that the State of Minnesota prohibits. For IDR decisions dated from October 26, 2022, through December 1, 2024, UHC has not paid $903,372 in IDR awards to SpecialtyCare. UHC is ignoring federal law and violating Minnesota state law and must be held accountable.

## PARTIES, JURISDICTION, AND VENUE

3.     SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare, through its affiliates and subsidiaries, is a leading national health care provider of intraoperative neuromonitoring throughout the United States, including Minnesota. SpecialtyCare has two affiliated entities: Plaintiffs Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC.

4.     Plaintiff Remote Neuromonitoring Physicians, PC is organized under the laws of the state of Pennsylvania and has its principal place of business in Brentwood, Tennessee.

5.     Plaintiff Sentient Physicians, PC, is organized under the laws of the state of Illinois and has its principal place of business in Brentwood, Tennessee.

6.      UHC is a for-profit corporation organized under the laws of the state of Delaware with its principal place of business in Minnesota. UHC insures and administers health insurance products and benefits plans throughout Minnesota.

7.      The Court has federal question jurisdiction pursuant to 28 USC § 1331 because the action arises under the laws of the United States, specifically including the No Surprises Act, 42 U.S.C. §§ 300gg-111, and the Federal Arbitration Act, 9 U.S.C. § 9, and pursuant to 28 USC § 1367(a) because the state law claims under are so related to the federal claims that they form a part of the same case or controversy.

8.      Under 9 U.S.C. § 9, any party to an arbitration may commence a summary action in court for confirmation of the award, and thereupon the Court must grant such an application, unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of this title. *See* 9 U.S.C. § 9.

9.      This Court has personal jurisdiction over UHC because, among other reasons, UHC operates, conducts, engages in and carries on a business in Minnesota and in this District, it maintains offices and facilities in Minnesota and in this District, and committed the acts complained of herein in Minnesota and in this District. Further, UHC is engaged in substantial and not isolated activity in Minnesota, both interstate and intrastate, and maintains its principal place of business in Minnesota.

10.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b)(1), (b)(2) and (c)(2) because UHC is a resident of this District and a substantial part of the events or omissions giving rise to the claim occurred, and the Court has personal jurisdiction over it.

## FACTUAL ALLEGATIONS

11.     This dispute arises from UHC's failure to reimburse SpecialtyCare for its health care services provided to UHC's members.

12.     At all material times, UHC was obligated to cover and reimburse SpecialtyCare for certain out-of-network ("OON") items and services rendered to UHC's members and insureds under the NSA.

13.     The NSA became effective January 1, 2022, and requires health plans and insurers, like UHC, to provide coverage and reimburse providers directly for OON emergency health care services and non-emergency services furnished by OON providers at participating hospitals and facilities.

14.     Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. 42 U.S.C. § § 300gg-111(b)(1)(C-D). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. *Id* § (c)(1)(A). If negotiations fail, the provider may initiate an independent dispute resolution ("IDR") process where a third-party arbitrator, known as an IDR entity, determines the pricing on the claim(s). *Id.* § (c)(1)(B).

15.     The IDR process requires both parties to submit position statements and proposed offers of payment for the items and services at issue to the IDR entity. *Id.* § (c)(5)(B)(i). The IDR entity evaluates both proposed offers based on a number of

statutory factors, then selects one offer as the appropriate payment for the items and services at issue. *Id*. § (c)(5)(C).

16.    After the IDR entity's determination, the health plan or insurer is required to pay the amount determined to be owed **within thirty (30) calendar days**. *Id*. § (c)(6).

17.    Since the implementation of the NSA, SpecialtyCare and UHC have engaged in numerous IDR processes to resolve OON payment disputes. Likewise, numerous IDR entities have issued determinations clearly requiring UHC to pay SpecialtyCare additional amounts pursuant to the NSA.

18.    The IDR awards at issue were rendered in accordance with the NSA, and are, therefore, binding upon SpecialtyCare and UHC. *Id*. § (c)(5).

19.    However, UHC has consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $903,372 in unpaid and past due claims owed to SpecialtyCare from UHC (the "IDR Awards"). A chart identifying each of the unpaid IDR Awards at issue in this action, including the dispute numbers for IDR Award against UHC and the amount UHC owes under each award, is attached hereto as **Exhibit "A."**

20.    Additionally, UHC has consistently failed to make timely payments within the NSA's required 30-calendar-day payment window, beginning when the IDR entity issued an award in favor of SpecialtyCare. Indeed, many payments are more than 120 days past due.

21.    SpecialtyCare has made numerous demands to UHC for its payment on the IDR Awards.

22.    In January of 2023, SpecialtyCare escalated the issue of UHC's routine failure to pay amounts owed for the IDR entity determinations to UHC. Although not required by the NSA, SpecialtyCare provided an inventory of IDR entity determinations to UHC to aid in the resolution of the IDR Awards. Such inventory listed the following identifying information:

- IDR dispute number
- CPT
- Service Date
- PCN
- Payor Claim Number
- Award Total
- Decision Date
- Expected Payment Date
- Total Payments (to date)
- Still Owed
- Patient Amount Paid

23.    SpecialtyCare diligently followed-up with UHC through multiple emails, UHC's online provider portal, and UHC's customer service hotlines, among other avenues. However, UHC frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the IDR Awards.

24.    SpecialtyCare engaged and continues to engage in a series of transactions in an open account with UHC.

25.    SpecialtyCare provided and continues to provide OON items and services to UHC's members and insureds and, when necessary to protect its rights, sought reimbursements pursuant to the NSA. Accordingly, SpecialtyCare also expects to enter

further transactions with UHC that may yield future IDR entity determinations and increase the IDR Awards.

26.     For each IDR determination at issue, UHC made an initial payment on the claim that was unreasonable and well below the amount ultimately awarded in the IDR.

27.     UHC makes low initial payments hoping that SpecialtyCare will be too busy to file IDR proceedings or will miss one of the NSA's strict deadlines. This forces SpecialtyCare to go through the IDR process, which is burdensome, on every claim.

28.     When SpecialtyCare challenges UHC's low payments and receives IDR awards for higher amounts, UHC then unreasonably delays payment past the statutory payment deadline of thirty days.

29.     UHC knows that it is statutorily required to pay IDR awards within thirty days. However, it does not invest in the compliance systems and personnel needed to meet its obligations under federal law because it knows that it, its shareholders, and the health plans it serves profit from lack of compliance and violation of the mandatory payment obligations. UHC knows that the longer it delays or denies payment, the more it earns from the interest and/or investment income generated for its fully insured business. By delaying payment or not paying IDR awards, UHC is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with UHC or using the results to market its services to other health plans.

30.     Despite SpecialtyCare's numerous demands, UHC has failed to satisfy the IDR Awards. As a result, UHC has forced SpecialtyCare to file this action to obtain the payments owed for services provided by SpecialtyCare. *See* Exhibit A.

31.    A determination by the IDR arbitrator is subject to judicial review pursuant to the standards set forth in the Federal Arbitration Act, 9 USC § 10(a)(1-4).

32.    Res judicata and collateral estoppel apply to the IDR Awards.

33.    Res judicata, or claim preclusion, provides that a final judgment on the merits bars a second suit for the same claim by parties or their privies.

34.    Collateral estoppel, or issue preclusion, provides that the determination of an issue by a prior court is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

35.    Both doctrines may be applied to give finality to administrative decisions if the decisionmaker acted in a judicial or quasi-judicial manner, such as the IDR process enacted by Congress.

## COUNT I
## UHC'S VIOLATION OF NO SURPRISES ACT

36.    SpecialtyCare incorporates and realleges the previous paragraphs as though fully alleged and set forth herein.

37.    The NSA states that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "**shall be made** directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E), 111(c)(6) (emphasis added). More than thirty days have passed for all IDR determinations at issue herein. UHC did not challenge the IDR Awards. UHC simply did not pay them.

38.     UHC has routinely failed to pay IDR Awards to SpecialtyCare within the statutorily mandated 30-day deadline.

39.     As a result of UHC's violation of and disregard of the NSA's requirements, SpecialtyCare has been directly and proximately damaged by UHC's failure to remit payment in full and is entitled to recover money damages plus prejudgment and post-judgment interest, in an amount to be determined at trial, but in no event less than $903,372.

## COUNT II
## UHC'S VIOLATION OF MINNESOTA STATUTES REQUIRING COMPLIANCE WITH THE NO SURPRISES ACT

40.     SpecialtyCare incorporates and realleges the previous paragraphs as though fully alleged and set forth herein.

41.     Minn. Stat. § 62Q.021, subd. 3, *Compliance with 2021 federal law*, requires that "[e]ach health plan company . . . shall comply with the No Surprises Act, including any federal regulations adopted under the act, to the extent that the act imposes requirements that apply in this state but are not required under the laws of this state."

42.     Minn. Stat. § 62Q.566, subd. 2(b), *Cost-sharing requirements and independent dispute resolution*, requires that "[a] health plan company must attempt to negotiate the reimbursement, less any applicable enrollee cost sharing under paragraph (a), for the nonparticipating provider services with the nonparticipating provider. If the attempt to negotiate reimbursement for the nonparticipating provider services does not result in a resolution, either party may initiate the federal independent dispute resolution process pursuant to the No Surprises Act, including any federal regulations adopted under that act."

43.     UHC is in violation of Minnesota statutes requiring compliance with the NSA.

44.     As a result of UHC's violation of and disregard of the NSA's requirements and Minnesota law, SpecialtyCare has been directly and proximately damaged by UHC's failure to remit payment in full and is entitled to recover money damages plus prejudgment and post-judgment interest, in an amount to be determined at trial, but in no event less than $903,371.

**COUNT III**
**ACTION FOR CONFIRMATION**
**OF IDR AWARDS (9 U.S.C. § 9)**

45.     SpecialtyCare incorporates and realleges the paragraphs as though fully alleged and set forth herein.

46.     The NSA requires UHC to pay IDR awards within thirty (30) days of the issuance of the award by the IDR arbitrator.

47.     Pursuant to Section 9 of the Federal Arbitration Act ("FAA"), a party to an arbitration may commence a summary action in court for confirmation of the award, and a "court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9.

48.     In keeping with the strong federal policy favoring arbitration, confirmation proceedings under the FAA are generally summary in nature. *See Domino Group, Inc. v. Charlie Parker Memorial Foundation,* 985 F.2d 417, 420 (8th Cir. 1993) ("in most cases 'the confirmation of an arbitration award is a summary proceeding that makes what is already a final arbitration award a judgment of the court'").

49.    As previously noted, IDR awards issued under the NSA are final and binding upon the parties and, hence, subject to enforcement by the Court under Section 9 of the FAA.

50.    SpecialtyCare is entitled to an order confirming the IDR Awards.[1]

51.    Accordingly, SpecialtyCare brings this action for an Order confirming each of the unpaid IDR Awards set forth in Exhibit A.

52.    The amounts owed on unpaid IDR Awards total $903,372, plus pre-judgment and post-judgment interest.

## COUNT IV – ACCOUNT STATED

53.    SpecialtyCare incorporates and realleges the paragraphs as though fully alleged and set forth herein.

54.    There is presently due and owing to SpecialtyCare from UHC the sum of $903,372 on an account stated between the parties, which amount represents the total owed on unpaid IDR Awards owed by UHC.

55.    SpecialtyCare has made frequent demands to UHC for the above-described amounts due and owing and provided a statement of UHC's balance owed on the IDR Awards to UHC, a copy of which is attached as Exhibit A.

56.    UHC did not object to the validity of the IDR entity determinations underlying the IDR Awards.

---

[1] The IDR awards and the amounts due and owing pursuant to said awards are not in dispute. UHC has copies of all IDR awards for which SpecialtyCare seeks confirmation. Furthermore, Exhibit A contains coding information and dates of decisions for UHC to confirm the amounts of the awards listed therein. As such, SpecialtyCare has not attached each IDR award for which it seeks confirmation to this Complaint.

57.     UHC manifested its assent to the accuracy of the IDR Awards.

58.     SpecialtyCare has been directly and proximately damaged by UHC's failure to remit payment in full on the account stated between the parties and is entitled to recover money damages plus prejudgment and post-judgment interest, in an amount to be determined at trial, but in no event less than $903,372.

## COUNT V – OPEN ACCOUNT

59.     SpecialtyCare incorporates and realleges the previous paragraphs as though fully alleged and set forth herein.

60.     SpecialtyCare provided services to UHC's members, and as a result a debt was generated.

61.     The debt was generated on a running account basis.

62.     The debt remains unresolved, and, at present, UHC owes SpecialtyCare the IDR Awards of $903,372, plus prejudgment and post-judgment interest.

63.     A copy of the account, in the form of an itemized chart listing the dispute numbers and amount owed for each IDR Award against UHC at issue herein, including the total amount that remains unpaid, is attached hereto as Exhibit A.

## COUNT VI – QUANTUM MERUIT

64.     SpecialtyCare incorporates and realleges the previous paragraphs as though fully alleged and set forth herein.

65.     SpecialtyCare rendered OON services and items to UHC's members and insureds.

66.    UHC was obligated to provide coverage for the services and items provided by SpecialtyCare for UHC's members and insureds.

67.    Therefore, UHC received a significant economic benefit from SpecialtyCare's services.

68.    UHC has knowledge of the benefits conferred upon it.

69.    UHC voluntarily accepted and retained the benefits conferred upon it.

70.    UHC's knowledge, acceptance, and retention of the benefits conferred upon it is evidenced by the fact that UHC received invoices for the services provided by SpecialtyCare and then made initial payments for those services to SpecialtyCare.

71.    Thus, UHC has acknowledged that it owes SpecialtyCare for the benefits SpecialtyCare conferred. However, UHC's initial payments were low and not commensurate to the reasonable value of the benefits conferred on it by SpecialtyCare.

72.    The dispute over the value of the benefits received was resolved in accordance with the IDR procedures set forth in the NSA. Final and binding IDR Awards were issued, and UHC was obligated to make payment within thirty ("30") days of the IDR Awards being issued.

73.    UHC has failed and refused to pay the amounts owed on the IDR Awards within thirty days as required by the NSA.

74.    UHC continues to improperly retain the amounts owed on the IDR Awards at issue herein.

75.    It would be inequitable for UHC to retain the benefits of the services provided by SpecialtyCare without paying the full value of the benefits as set forth in the IDR Awards, and SpecialtyCare has suffered damages as a result.

76.    The reasonable value of the services performed by SpecialtyCare is the amount determined in the ADR Awards.

77.    SpecialtyCare hereby seeks payment of the IDR Awards in quantum meruit in the amount of $903,372, plus pre-judgment and post-judgment interest.

## COUNT VII – UNJUST ENRICHMENT

78.    SpecialtyCare incorporates and realleges the previous paragraphs as though fully alleged and set forth herein.

79.    SpecialtyCare rendered OON services and items to UHC's members and insureds.

80.    These services were provided at SpecialtyCare's expense and under circumstances that would make it unjust for UHC to retain the benefit without commensurate compensation.

81.    UHC was obligated to provide coverage for the services and items provided by SpecialtyCare for UHC's members and insureds.

82.    Therefore, UHC received significant economic benefits from SpecialtyCare's services.

83.    UHC has knowledge of the benefits conferred upon it.

84.    UHC voluntarily accepted and retained the benefits conferred upon it.

85.     UHC's knowledge, acceptance, and retention of the benefits conferred upon it is evidenced by the fact that UHC received invoices for the services provided by SpecialtyCare and then made initial payments for those services to SpecialtyCare.

86.     Thus, UHC has acknowledged that it owes SpecialtyCare for the benefits SpecialtyCare conferred. However, UHC's initial payments were low and not commensurate to the value of the benefits conferred on it by SpecialtyCare.

87.     The dispute over the value of the benefits received was resolved in accordance with the IDR procedures set forth in the NSA. Final and binding IDR Awards were issued, and UHC was obligated to make payment within thirty ("30") days of the IDR Awards being issued.

88.     UHC has failed and refused to pay the amounts owed on the IDR Awards within thirty days as required by the NSA.

89.     UHC continues to improperly retain the amounts owed on the IDR Awards at issue herein.

90.     UHC would be unjustly enriched if allowed to retain the benefit of the services provided by SpecialtyCare without paying the full value thereof for the benefits as set forth in the IDR Awards, and SpecialtyCare has suffered damages as a result.

91.     SpecialtyCare hereby seeks payment of the IDR Awards in the amount of $903,372, plus prejudgment and post-judgment interest.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.      An Order enforcing all the IDR Awards not paid within thirty days as required by the No Surprises Act and a judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961;

B.      An Order enforcing all the IDR Awards not paid within thirty days under Minnesota statutes requiring compliance with the No Surprises Act and a judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961;

C.      An Order confirming each IDR Award included in Exhibit A pursuant to 9 U.S.C. § 9;

D.      For account stated, judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961;

E.      For open account, judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961;

F.      For quantum meruit, judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961

G.      For unjust enrichment, judgment for the total amount outstanding on the IDR Awards plus pre-judgment and post-judgment interest under 28 U.S.C. § 1961;

H.      Equitable relief requiring UHC comply with the No Surprises Act by paying all future IDR Awards within thirty ("30") days of each award; and

I.      Any and all additional legal or equitable relief to which SpecialtyCare may be entitled.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a trial by jury for all issues so triable as a matter of right.

**HENSON & EFRON, P.A**.

Dated:  December 11, 2024

*/s/ Scott A. Neilson*

Scott A. Neilson, #239951
Dylan J. Wallace, #0403911
225 South Sixth Street, Suite 1600
Minneapolis, MN 55402
(612) 339-2500
sneilson@hensonefron.com
dwallace@hensonefron.com

and

James V. Etscorn (to be admitted pro hac vice)
Andrew T. Hughes (to be admitted pro hac vice)
Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, FL 32801
407-649-4000
jetscorn@bakerlaw.com
ahughes@bakerlaw.com

***Attorneys for Plaintiffs***